**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM JACKSON**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-1421-KSM** |
| **TEMPLE UNIVERSITY,** | |
| Defendant. | |

**MEMORANDUM**

**Marston, J.**                                                    **September 27, 2021**

Plaintiff William Jackson brings claims for age and disability discrimination against his former employer, Defendant Temple University. (Doc. No. 1.)  Temple has moved to dismiss the complaint in its entirety, arguing that it fails to state claims upon which relief can be granted. (Doc. No. 3.)  In the alternative, Temple moves for summary judgment on the grounds that Jackson waived his claims when he signed a Compromise and Release Agreement during workers' compensation proceedings.  (*Id.*)  For the reasons discussed below, Temple's motion is granted in part and denied in part.

I.

Taking the allegations in the complaint as true, the relevant facts are as follows.  Temple University hired Jackson in August 2016 in the position of Roving Engineer II.  (Doc. No. 1 at ¶ 13.)  In that role, Jackson was responsible for inspecting and performing maintenance at the buildings on Temple's North Broad Street campus.  (*Id.* at ¶ 14.)  Jackson had the necessary education to perform this role, along with more than 20 years of experience in the field of facility management, and his initial reviews were commendable and above standard.  (*Id.* at ¶¶ 15–16.)

On January 6, 2018, Jackson was injured when he fell while at work. (*Id.* at ¶ 17.) His injuries left him unable to: (1) stand for more than 10 to 15 minutes at a given time, (2) lift or carry any object heavier than 5 to 10 pounds, (3) walk up and down stairs, and (4) climb. (*Id.* at ¶ 18.) As a result, he was "unable to perform the full function of the position of Roving Engineer II for a period of time." (*Id.* at ¶ 19.)

In November 2018, Jackson was sufficiently recovered to perform the essential functions of the Roving Engineer II position with a reasonable accommodation. (*Id.* at ¶ 20.) Specifically, Jackson asked that he be transferred to an open position which had limited requirements to walk or climb. (*Id.* at ¶ 23.) Someone at Temple (Jackson does not identify who) denied the request, taking the position that Jackson "was fully able to perform the duties of his position without any accommodation." (*Id.* at ¶ 26.) Jackson alleges that Temple took this position "in retaliation for his request for a reasonable accommodation." (*Id.* at ¶ 27.)

Despite this denial, Jackson "continued to ask for an accommodation in that he be transferred to an open position working in the department which would have required limited walking and climbing." (*Id.* at ¶ 28.) Jackson does not describe the open position, but claims in conclusory terms that he was "qualified for this position in terms of his education, training, and his prior work experience." (*Id.* at ¶ 29.) An unidentified individual once again denied his request on the basis of "a report from a workers compensation doctor retained by [Temple]." (*Id.* at ¶ 32.) Jackson then asked for a new accommodation, in the form of a leave of absence, which someone at Temple again denied. (*Id.* at ¶¶ 34–35.) Jackson asserts that no one at Temple contacted him to "discuss his request for a leave of absence," despite the fact that Temple "has, on prior occasions, provided accommodations to other employees in its Facilities Department such as providing leave, allowing a transfer or changing a work schedule." (*Id.* at ¶¶ 36, 38.)

Given this, Jackson alleges that Temple "treated [him] differently" when it refused to engage with him about his request for a reasonable accommodation, his request for a leave of absence, or his request for a transfer to a new position.  (*Id.* at ¶ 40a–c.)  And he claims that Temple erred when it failed to "provide him with a reasonable accommodation" even though it could have done so "without undue hardship to it."  (*Id.* at ¶ 40d.)

Jackson also "believe[s] that his age was . . . used as a reason not to provide him with an accommodation" because "comments were made as to 'how long' Plaintiff was employed;" and "the position that he applied for was given to a substantially younger individual who did not possess the knowledge or skill to perform the job."  (*Id.* at ¶ 45.)  Jackson does not say who made these comments, when they were made, or the context in which they were made.  Neither does he identify the position for which he applied, the person to whom it was given, their age, or their level of education and skill.

Jackson was eventually terminated.  (*Id.* at ¶ 52.)  He provides no facts about when or how he was let go, except that it occurred after his requests for accommodation.  Jackson also states in conclusory fashion that he "believes and therefore avers that the real reason why he was terminated was based on his age," "his disability," and in "retaliation."  (*Id.* at ¶¶ 52–55.)

Jackson dual filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") on August 19, 2019.  (*Id.* at ¶¶ 62, 67.)  The EEOC issued a Dismissal and Notice of Rights on December 17, 2019 (*id.* at ¶ 63 & p. 14), and Jackson filed his complaint in this case on March 13, 2020 (*see id.*).  He brings claims for age discrimination under the Pennsylvania Human Relations Action ("PHRA") and the Age Discrimination in Employment Act ("ADEA"), a claim for disability discrimination under the Americans with Disability Act ("ADA"), and claims for

retaliation under Title VII of the Civil Rights Act of 1964, the PHRA, the ADA, and the

Philadelphia Fair Practices Ordinance ("PFPO").  (*See generally id.*)  Temple University has

filed a motion to dismiss or in the alternative, for summary judgment.  (Doc. No. 3.)  Jackson

opposes the motion.[1]  (Doc. No. 9.)  For the reasons discussed below, the motion is granted in

part and denied in part.

II.

A.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Id.*  "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Id.*  "Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

"As a general matter, a district court ruling on a motion to dismiss may not consider

matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

---

[1] In addition to Jackson's substantive arguments, he asks that the Court deny the motion outright because Temple failed to comply with the meet and confer requirements outlined in the Court's publicly available Policies and Procedures.  (Doc. No. 9 at p. 24.)  The Court will consider the substantive arguments raised in Temple's motion to dismiss.  However, defense counsel is warned that in the future, the Court expects counsel to adhere to all of the procedures outlined in the Court's Policies and Procedures, including the meet and confer requirement.

1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks omitted and alterations accepted). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

## B.

In the alternative, Temple moves for summary judgment, arguing that the Compromise and Release Agreement, along with a transcript from the hearing before the workers' compensation judge, show that Jackson willingly waived the claims presented in the complaint. Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted); *see also id.* at 325 ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."). After the moving party has met its burden, the nonmoving party is required to "designate specific

facts showing that there is a genuine issue for trial." *Id.* at 323 (quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).  In performing this analysis, all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quotation marks and alterations omitted).

III.

Temple argues that Jackson's complaint should be dismissed because he failed to exhaust his PHRA and PFPO claims, failed to state claims for violation of the ADEA or for retaliation under the ADA, and all of Jackson's claims are barred by the parties' Compromise and Release Agreement.  We address each argument in turn.

A.

First, Temple argues that Jackson failed to administratively exhaust his PHRC and PFPO claims because he filed his complaint approximately eight months after filing his charge of discrimination with the PHRC.  (Doc. No. 3 at pp. 10–12.)  All PHRA claims must first be brought to "an administrative agency, the PHRC, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." *Burgh v. Borough Council of Borough of Montrose*, 751 F.3d 465, 471 (3d Cir. 2001).  Because the PHRC has exclusive jurisdiction during this time, "[a] complainant may not file an action in court for a period of one year." *Id.*  However, after this one-year period has elapsed, the complainant may file a court action "regardless of whether or not he has received a letter from the PHRC." *Id.*

Temple is correct that Jackson prematurely filed his complaint.  Because Jackson dual-

6

filed his charge of discrimination with the EEOC and PHRC on August 19, 2019, the PHRC

retained jurisdiction until August 19, 2020.  That said, at this point, the August 19, 2020 deadline

has long since passed.  Therefore, Temple's exhaustion argument is moot, and we deny the

motion to dismiss on these grounds.  *See Johnson v. Chase Home Finance*, 309 F. Supp. 2d 667,

670 (E.D. Pa. 2004) ("Because plaintiff's case has been dismissed by the PHRC, she is now

entitled to bring suit in federal court notwithstanding the fact that the case was dismissed by the

PHRC after she filed the instant complaint.  The issue of exhaustion on the grounds that the

PHRC retains exclusive jurisdiction over cases filed under the PHRA for a period of one year is

moot due to the PHRC's dismissal of plaintiff's complaint."); *Wardlaw v. City of Philadelphia*,

Civil No. 09-3981, 2011 WL 1044936, at *3 (E.D. Pa. Mar. 21, 2011) ("Even if the second

PHRC charge was not within the scope of Wardlaw's first PHRC charge, and thus filed

prematurely by inclusion in the Second Amended Complaint, that defect has been cured by the

passage of time.  Courts in this Circuit have adopted a flexible approach to PHRA exhaustion by

permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during court

proceedings.").

## B.

Next, Temple argues that Jackson's age discrimination claim in Count II should be

dismissed because Jackson failed to state a claim for violation of the ADEA.  (Doc. No. 3 at

pp. 12–15.)  Among other things, the ADEA prohibits an employer from "refus[ing] to hire . . .

discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's

age."  29 U.S.C. § 623.  To state a claim for age discrimination under the ADEA, a plaintiff must

allege that "(1) he is over forty, (2) he is qualified for the position in question, (3) he suffered

from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006). Temple takes issue with the fourth element.[2]

To plausibly allege the fourth element, the plaintiff must either: "(1) allege that similarly situated employees who were not members of the same protected class were treated more favorably under similar circumstances, or (2) allege facts that otherwise show a causal nexus between the employees' membership in a protected class and the adverse employment action." *Drummer v. Trustees of Univ. of Pa.*, 286 F. Supp. 3d 674, 681 (E.D. Pa. 2007); *see also Holyk v. Scranton Counseling Ctr.*, Civil Action No. 3:17-0435, 2018 WL 585611, at *5 (M.D. Pa. Jan. 29, 2018) (same).

Here, Jackson claims that his transfer request was denied and that the open position "was given to a substantially younger individual who did not possess the knowledge or skill to perform the job." (Doc. No. 1 at ¶ 45.) This on its own is insufficient to give rise to an inference of discrimination. *See Cauler v. Lehigh Valley Hosp., Inc.*, 654 F. App'x 69, 72 (3d Cir. 2016) ("[W]e agree that the allegation in the complaint that a "substantially younger" person was hired does not give rise to an inference of discrimination."); *see also Drummer*, 286 F. Supp. 3d at 682 ("Plaintiff's bare assertion that he was replaced by a younger secretary does not raise his claim above the level of mere speculation."). "Not only is it simply a bare contention, 'substantially younger' is a legal conclusion, not a factual allegation on which an inference could be based." *Cauler*, 654 F. App'x at 72; *accord Adams v. Lafayette Coll.*, Civil Action No. 09-3008, 2009 WL 2777312, at *3 (E.D. Pa. Aug. 31, 2009) ("Adams' statements that younger employees were

---

[2] As to the first three elements, Jackson alleges that he was over 60 years old when Temple denied his transfer request and that he was qualified by education and experience for the open position. (*See* Doc. No. 1 at ¶¶ 29, 31, 45, 48.)

8

treated differently on several other occasions and that he received harsher treatment because of his age are merely legal conclusions.  Without some factual basis, they simply restate the elements of a prima facie age discrimination claim and are not entitled to be presumed to be true."); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." (quotation marks omitted)).

Jackson also alleges that at some unidentified time, unknown individuals made "comments" about "how long" Jackson had been employed.  (Doc. No. 1 at ¶ 45a.)  But without at least some additional facts, this cannot on its own render Jackson's discrimination claim plausible.  *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 333 (3d Cir. 1995) ("We have held that stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.").  Jackson argues that this allegation is sufficient to support an inference of discrimination because he has "buttressed his age discrimination claim by asserting that his supervisors made age-based comments about his tenure of employment."  (Doc. No. 9 at pp. 12–13 (citing *Romantine v. CH2M Hill Engineers, Inc.* and *Wargats v. Pittsburgh Technical Institute*)).  We disagree.

As an initial matter, we reiterate that Jackson has *not* alleged that his *supervisors* made age-based comments.  In addition, without any context, we cannot find that comments about Jackson's tenure are comparable to the types of retirement-focused comments that courts have found sufficient in the past.  *Cf. Angelini v. U.S. Facilities, Inc.*, Civil Action No. 17-4133, 2018

WL 3155995, at *10 (E.D. Pa. June 27, 2018) (denying motion to dismiss where the plaintiff

pled, among other things, that the defendant's "CEO asked him how old he was and how much

longer he wanted to work approximately one month before his termination"); *Romantine v.*

*CH2M Hill Eng'rs, Inc.*, C.A. No. 09-973, 2010 WL 5419017, at *12–13 (W.D. Pa. Nov. 24,

2010) ("Here, the Court finds that McKelvy's comments concerning the organization getting

'younger and cheaper,' and 'hunters vs. herdsmen,' along with Miller's comment about "getting

rid of white-haired men to lower overhead costs," even though remote in time from the decision

to terminate Plaintiff, are relevant as circumstantial evidence of age discrimination."); *Wargats v.*

*Pittsburgh Tech. Inst.*, Civil Action No. 05-0318, 2007 WL 81056, at *2–3 (W.D. Pa. Jan. 8,

2007) (denying motion for summary judgment where the president of the college asked a

professor multiple times in an eight-month period when he planned to retire and fired him shortly

after the last of these conversations).  Indeed, it is far from clear that comments about "how

long" Jackson worked at Temple were even about his age, given that he worked at the University

for less than four years.

      For those reasons, we grant Temple's motion to dismiss Count II.  However, this count is

dismissed without prejudice, and Jackson will be given an opportunity to cure the errors

identified in this memorandum, if he can do so in good faith.

C.

      Third, Temple argues that Jackson has failed to state a claim for retaliation under the

ADA because he "is simply trying to repackage his failure-to-accommodate claim as retaliation,

which the law does not permit."  (Doc. No. 3 at p. 15.)

      To state a claim for disability retaliation, the "employee must allege:  (1) he engaged in

protected employee activity; (2) he suffered an adverse employee action; and (3) the adverse

10

action was causally related to the protected activity." *Drummer*, 286 F. Supp. 3d at 683. Temple is correct that Jackson cannot merely repurpose his failure to accommodate claim into a claim for retaliation. *See Williams v. Phila. Hous. Auth.*, 230 F. Supp. 2d 631, 639 n.10 (E.D. Pa. 2002), *rev'd in part on other grounds by* 380 F.3d 751 (3d Cir. 2004) ("Plaintiff's claim, to the extent that it is based upon the defendant's denial of his request for a reasonable accommodation, is stated as a retaliation claim in form, but is, in substance, a claim of failure to accommodate. . . . Thus, the court will address this claim in its proper context, as a failure to accommodate, below.").

However, in addition to his requests for reasonable accommodation, Jackson also alleges he was "terminated . . . based on retaliation" for those requests. (Doc. No. 1 at ¶ 54; *see also* Doc. No. 9 at p. 18 ("Because requesting an accommodation is considered a protected activity, one of the main issues for the jury to decide will be whether Defendant *terminated* Plaintiff . . . because Plaintiff requested multiple accommodations." (emphasis added)).) Therefore, we find that at this stage, Jackson has stated a claim for retaliation as it relates to his termination. *See Smith v. Univ. of Scranton*, 770 F. App'x 23, 25 (3d Cir. 2019) ("Employers may not punish their employees for asking them to accommodate a disability at work."); *Williams v. County of Montgomery*, Civil Action No. 03-6951, 2005 WL 8176581, at *2 (E.D. Pa. Aug. 8, 2005) (finding a genuine issue of material fact about whether the plaintiff "made repeated requests for accommodations for her disability" and "suffered an adverse employment action, termination, after or contemporaneous with her requests for accommodation").

For those reasons, Temple's motion is granted in part and denied in part as it relates to Jackson's claims for disability retaliation in Counts IV,[3] V, and VI.

---

[3] In addition to seeking dismissal of the ADA and PHRA retaliation claims contained in Counts V and VI, Temple also seeks dismissal of Count IV (*see* Doc. No. 3 at p. 15), which is titled "Title VII of

D.

Temple also moves to dismiss the entire complaint on the grounds that Jackson released all claims against Temple when he signed a Compromise and Release Agreement during workers' compensation proceedings.  (Doc. No. 3 at pp. 17–20; Doc. No. 3-2.)  To its motion, Temple attaches a copy of the Compromise and Release Agreement (Doc. No. 3-2), a transcript from the hearing before the workers' compensation judge (Doc. No. 3-3), and the judge's bench order approving the Agreement (Doc. No. 3-4).  None of these documents or the workers' compensation proceeding were referenced in the complaint.  Therefore, these documents are not properly considered at the motion to dismiss stage.  *See Batjer v. AHS Hosp. Corp.*, 594 F. App'x 73, 75 (3d Cir. 2014) (considering arguments related to release and waiver under standard for summary judgment because "[a]lthough we have taken a generous view about what may be considered by a court entertaining a Rule 12(b)(6) motion, the District Court may have exceeded those limits here when it relied on statements made by Batjer at its hearing" (citations omitted)); *Wyatt v. J.S. Procurement Corp.*, Civil Action No. 05-4490, 2006 WL 8457734, at *2 (D.N.J. Jan. 24, 2006) ("The Court cannot consider the Release in adjudicating the instant motion because plaintiff does not rely on it in his Amended Complaint."); *see also Dorsey v. Pa. Dep't of Corr.*, Civil No. 1:16-CV-588, 2016 WL 6124420, at *2 (M.D. Pa. Oct. 20, 2016) ("In

---

the Civil Rights Act of 1964 Based on Retaliation" (Doc. No. 1 at p. 9).  Temple reasons that "[b]ecause the Complaint does not allege any conduct that could be viewed as actionable under Title VII of the Civil Rights Act of 1964, Temple can only assume that this characterization is a drafting error, and that Jackson intended to rely for this count on the ADA rather than Title VII."  (Doc. No. 3 at p. 15 n.4.)  Jackson does not deny or otherwise respond to this assertion in his opposition brief, and therefore, concedes that Temple's assumption is correct.  *See, e.g.*, *McCowan v. City of Philadelphia*, Civil Action No. 19-3326-KSM, 2021 WL 84013, at *14 (E.D. Pa. Jan. 11, 2021) ("In the alternative, we find that dismissal is warranted because McCowan failed to respond to the City Defendants' argument."); *Ghoubrial v. Johanns*, Civil Action No. 05-CV- 04256, 2006 WL 8459472, at *2 n.6 (E.D. Pa. Sept. 29, 2006) ("[P]laintiff filed a response but did not address the sovereign immunity argument made by the United States.  The motion to dismiss by the United States could, therefore, be granted as uncontested.").

reviewing a motion to dismiss, a court must 'consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputably authentic documents if the plaintiff's claims are based upon these documents.'" (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010))).

In the alternative, Temple asks that we convert its motion to dismiss into a motion for summary judgment. The Court has discretion to convert a Rule 16 motion to dismiss into a Rule 56 motion for summary judgment. *Cf. Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) ("Generally, however, if matters outside the pleadings are presented to the district court, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles."). We decline to convert Temple's motion into one for summary judgment, and therefore, will not consider the Compromise and Release Agreement (Doc. No. 3-2), the hearing transcript (Doc. No. 3-3), or the judge's order (Doc. No. 3-4) at this time.[4] Temple may raise this defense again, after the parties have had time to engage in discovery.

---

[4] In the alternative, even if we were to convert the motion to dismiss into one for summary judgment, we would deny the motion as premature. When analyzing whether an employee has waived discrimination claims against his employer, the court looks to the "totality of the circumstances" to determine whether the waiver was "knowingly" and "willfully" entered into. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 523–24 (3d Cir. 1988); *accord Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 730–31 (3d Cir. 2005). In performing this analysis, the Court must consider, among other things, "the plaintiff's education and business experience," "the amount of time the plaintiff had possession of or access to the agreement before signing it," and "the role of plaintiff in deciding the terms of the agreement." *Coventry*, 856 F.2d at 523. These are fact-specific questions for which the Court currently has no answers, and which render summary judgment premature at this time. *See Wyatt*, 2006 WL 8457734, at *2 (explaining that if the court had converted the motion to dismiss into a motion for summary judgment, there are "several apparent issues of fact that would likely defeat the motion — namely, plaintiff's arguments that the instant claims are outside the scope of the Release and his claims were excluded from the terms of the Release").

And as to Jackson's age discrimination claims in particular, the Court must consider whether the waiver complies with the Older Workers Benefit Protection Act ("OWBPA"). This Act amended the ADEA and replaced the Third Circuit's totality of the circumstances test with a statutory test for "knowing and voluntary" waiver in the age discrimination context. *See* 29 U.S.C. § 626(f) ("An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary."). The OWBPA states that a "waiver may not be considered knowing and voluntary unless,"

IV.

For those reasons, Temple's motion is granted in part and denied in part.  Count II is dismissed without prejudice in its entirety.  Counts IV, V, and VI are dismissed with prejudice only to the extent that they repackage failure to accommodate claims as claims for retaliation. The remainder of the motion is denied.

---

among other things, the employee is "advised in writing to consult with an attorney prior to executing the agreement," given either 21 or 45 days to consider the agreement, and given 7 days following the execution of the agreement to revoke it.  *Id.*  Again, the Court finds that open fact questions render summary judgment on this issue inappropriate at this time.